# RHODE ISLAND STATEWIDE

# BUILDING AND SITE CONSTRUCTION AGREEMENT

Between

RHODE ISLAND CHAPTER, ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC.

LABOR RELATIONS DIVISION

And

RHODE ISLAND LABORERS' DISTRICT COUNCIL
of the
LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, AFL-CIO

Acting on Behalf of

Local Union 15, Westerly, R. I.
Local Union 271, Providence, R. I.
Local Union 673, Newport, R. I.

Effective June 1, 2005 through May 31, 2009

LABORERS' INTERNATIONAL UNION
HONOR • STRENGTH • JUSTICE
Organized April 13, 1903
of North America

EXHIBIT
A

# TABLE OF CONTENTS


| ARTICLE | | PAGE |
|---|---|---|
| I | TERRITORIAL JURISDICTION OF LOCAL UNIONS | 2 |
| II | UNION RECOGNITION, UNION SECURITY, EMPLOYMENT OF LABORERS AND SUBCONTRACTORS | 2 |
| III | WAGES - HOURS - CLASSIFICATIONS - SHIFTS | 8 |
| IV | COVERAGE AND DESCRIPTION OF LABORERS' WORK | 12 |
| IV A | CONSTRUCTION MANAGER/PROGRAM MANAGER | 15 |
| V | HEATERS | 16 |
| VI | REPORTING TIME PAY | 17 |
| VII | CONDITIONS OF AGREEMENT | 19 |
| VII A | HOLIDAYS | 24 |
| VIII | BUSINESS MANAGER - FIELD REPRESENTATIVES - STEWARDS - FOREMEN | 24 |
| IX | RHODE ISLAND LABORERS' HEALTH FUND | 26 |
| X | RHODE ISLAND LABORERS' PENSION FUND | 29 |
| XI | NEW ENGLAND LABORERS' TRAINING TRUST FUND | 31 |
| XI A | RHODE ISLAND LABORERS' APPRENTICESHIP PROGRAM | 32 |
| XI B | NEW ENGLAND LABORERS' LABOR/MANAGEMENT COOPERATION TRUST FUND | 34 |
| XI C | NEW ENGLAND LABORERS' HEALTH & SAFETY FUND | 35 |
| XI D | RHODE ISLAND LABORERS' UNIFIED TRUST FUND | 37 |
| XII | RHODE ISLAND LABORERS' LEGAL SERVICES FUND | 38 |
| XIII | RHODE ISLAND LABORERS' ANNUITY FUND | 40 |
| XIV | INDUSTRY ADVANCEMENT PROGRAM | 41 |
| XV | CHECK-OFF AND PAYROLL DEDUCTION | 43 |
| XVI | DELINQUENT PAYMENTS | 46 |
| XVII | SEVERAL LIABILITY | 47 |

| | | |
|---|---|---|
| XVIII | PROCEDURE FOR ADJUSTMENT OF DISPUTES & ARBITRATION | 48 |
| XIX | TERMINATION OF AGREEMENT | 50 |

THIS AGREEMENT made and entered into this 1st day of June, 2005, by and between the RHODE ISLAND CHAPTER, ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC., Labor Relations Division, a non-business corporation, organized and existing under the laws of the State of Rhode Island, referred to hereinafter as the "Association," acting for and in behalf of and under the authority of its members and any members joining said Association it is authorized and has agreed to represent during the term of this Agreement, and any other Building Contractor who executes an Acceptance of the Terms and Provisions of this Agreement, collectively referred to as the "Employer", and the RHODE ISLAND LABORERS' DISTRICT COUNCIL OF THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA, acting on behalf of Local Union 15, Westerly, Rhode Island; Local Union 271, Providence, Rhode Island; and Local Union 673, Newport, Rhode Island, hereinafter referred to as the "Union".

PREAMBLE

This Agreement is entered into to facilitate the adjustment of grievances and disputes between the employers and employees; to provide, insofar as possible, for the continuous employment of labor and to bring about stable conditions in the industry, and to establish necessary procedures for the amicable adjustment of all disputes which may arise between employers and employees.

DECLARATION OF PRINCIPLES

There shall be no discrimination against any workman by reason of race, creed, color, sex, or national origin.

ARTICLE I

TERRITORIAL JURISDICTION OF LOCAL UNIONS

This Agreement shall apply to the cities and towns within the counties of Bristol, Kent, Newport, Providence and Washington, in the State of Rhode Island. The territorial jurisdiction of each Local Union covered by this Agreement is as follows:

Local Union 15, Westerly, Rhode Island

Westerly, Charlestown, Hopkington, and Richmond.

Local Union 271, Providence, Rhode Island

Providence, Barrington, Bristol, Burrillville, Central Falls, Coventry, Cranston, Cumberland, East Greenwich, East Providence, Exeter, Foster, Glocester, Johnston, Lincoln, Narragansett, North Kingstown, North Providence, North Smithfield, Pawtucket, Scituate, Smithfield, South Kingstown, Warren, Warwick, West Greenwich, West Warwick, and Woonsocket.

Local Union 673, Newport, Rhode Island

Newport, Little Compton, Middletown, Portsmouth, Tiverton, and the Islands of Jamestown, Prudence and Block Island.

ARTICLE II

UNION RECOGNITION, UNION SECURITY, EMPLOYMENT OF LABORERS AND SUBCONTRACTORS

Section 1. The Employer hereby recognizes and acknowledges

that the Union is the exclusive representative of all employees in the classification of work covered by this Agreement for the purpose of collective bargaining as provided by the Labor-Management Relations Act of 1947, as amended.

Section 2. All present employees who are members of the Union on the effective date of this Agreement shall remain members in good standing by the payment of the regular membership dues as a condition of continued employment. All present employees who are not members of the Union and all employees who are hired hereafter for work in the classifications specified herein shall become and remain members in good standing by the payment of the regular required initiation fee and regular membership dues on the eighth day following the execution of this Agreement or the date of employment, whichever is later, and shall thereafter maintain such good dues standing for the term of this Agreement. A list of laborer employees designated by name and current wage classification shall be maintained by the employer and made available to the union upon request.

Section 3. Upon receipt of written notice from the Union, the Employer shall discharge any employee who fails to become or is not a member of the Union on the prescribed day, provided membership was available under the same terms and conditions as generally applicable to other members. The Union agrees to indemnify, defend and hold the employer harmless from any claim arising from any such discharge.

Section 4. "Membership in good standing," as referred to

herein, means solely the tender, or payment of, regular membership dues and the regular initiation fee.

Section 5. Should the present Federal Law be amended during the term of this Agreement to allow compulsory membership in the union on the date of employment. This clause is hereby automatically changed to include such amendments as of the effective date of the law.

Section 6. (a) The Employer recognizes that the Laborers' Union is the established and prime source of skilled and dependable labor, necessary and required to perform the kind of work covered within the laborers' jurisdiction, and that the Laborers' Union is ready, willing, and able to furnish workmen to perform the work covered by this Agreement.

(b) The Employer reserves and shall have the right to rehire any employee who has been an employee of the company, provided said employee has worked for the Employer during the period of six (6) months preceding the date of hiring. The Employer must furnish the Union the name and address of any employee who has been recalled.

(c) When the Employer has exhausted the rehiring of former employees as stated in Section 6(b) above, then the Employer must inform the Union office of all work opportunities and openings. The Union must have the first opportunity to refer applicants for such employment openings.

(d) The Employer reserves and shall have the right to accept or reject any applicants referred by the Union.

The Employer reserves and shall have the right to transfer laborers to any site he deems necessary.

(e) The Employer, in requesting referrals, shall specify to the Union, (a) the number of employees required, (b) the location of the project; (c) the nature and type of construction involved, (d) the work to be performed and (e) such other information as is deemed essential by the Employer in order to enable the Union to make proper referral of Applicants.

(f) Selection of applicants for referral to jobs shall be on a nondiscriminatory basis and shall in no way be affected by union membership, bylaws, rules, regulations, constitutional provisions or any other aspect or obligation of union membership policies or requirements.

(g) In the event that the Union is unable to fill the requisition of the above Employer for employees within a twenty (20) hour period, excluding Saturdays, Sundays, and Holidays, after such requisition is made by the Employer, the Employer may employ applicants directly at the job site.

(h) When an Employer requests a certain number of laborers through the Union office and these laborers appear on the job site, at the time requested, ready for work and with a card from the Union office showing that they came to fill the request, then they must be put to work or paid not less than four (4) hours' time, unless prevented from working on account of bad weather or conditions which could not have been reasonably anticipated by the Employer.

<u>Section 7.</u> a) <u>Subcontracting.</u> The Employer agrees that the wages, including Health, Annuity, Pension, Training, LECET, Health & Safety and Legal services fund contributions, and hours provided for by this Agreement shall encompass the entire work covered by this Agreement, thereby applying equally to any subcontract let by the Employer on work covered by this Agreement at the site of any job.

b) The Employer further agrees to refrain from subletting any work covered by this Agreement to be done at the site of a construction project, except where such subcontractor subscribes and agrees to be bound by this Agreement and complies with all of the terms and conditions of this Agreement; provided that the Union may with good cause reject any such contractor. The parties recognize the Union's right to reject a contractor who it has previously terminated or a contractor that does not employ laborers to perform work covered by this Agreement.

c) The Employer agrees that he will not contract any work covered by this Agreement, which is to be performed on the job site, except from contractors who are parties to a collective bargaining agreement with the Union. Furthermore, any violation of this Section will result in the forfeiture of any Unified Trust award set forth in Article XI D on the project at issue. The Secretary-Treasurer of the Rhode Island Laborers' District Council or his/her designee may grant relief from this Section provided that the Employer seeking such relief makes

such request in writing to the Secretary-Treasurer or his/her designee. Such request will be considered and a response will be given to the Employer within forty-eight (48) hours of receipt of said request. The granting of such relief shall not constitute a violation of the favored nation clause of this Agreement.

This Section shall not apply to file bidders on projects that carry file subbidders and to vendors furnishing material solely, or to any person furnishing trucking or transportation.

Section 8. In no event shall the Employer be required to pay higher rates of wages, or be subject to more unfavorable working rules than those established by the Union for any other employer engaged in similar work.

Section 9. If any provision of this Agreement is in conflict with the laws or regulations of the United States or the State of Rhode Island, such provision shall be superseded by such law or regulation, but all other provisions of this Agreement shall continue in full force and effect; provided that in no case shall wage rates be paid which are lower than those set out in this Agreement.

Section 10. Pre-job-Conference. The Employer who is a general contractor or subcontractor on a given project in which the general contract exceeds two (2) million dollars, will notify said Local Union prior to his commencing work on said project on the following:

(a) Location of jobsites;

(b) Approximate starting date and duration;

(c) Type of job;

(d) Approximate manpower requirements.

The Union may elect to accept a telephone call as a pre-job conference or it may require a pre-job conference meeting to be held at a mutually agreeable time and place to discuss the anticipated hiring procedures, work assignments, shift work, safety, health hazards and accident prevention.

The provisions of this Section shall not apply where a governmental agency's prohibition, limitation, or restriction of the work to be performed interferes with the starting time of the regular workday, in which event the starting time shall be determined by the Employer based on said prohibition, limitation or restriction.

Section 11. This Agreement shall be binding upon the Employer named herein, and its successors and assigns, and no provisions herein contained shall be nullified or affected in any manner as a result of any consolidation, sale, transfer, assignment, or any combination thereof or disposition of the company.

ARTICLE III

WAGES - HOURS - CLASSIFICATIONS - SHIFTS

Section 1. Wages shall be paid as follows:

| | 6/01/05 to 11/27/05 | 11/28/05 to 5/28/05 | 5/29/06 to 12/03/06 | 12/04/06 to 5/27/07 |
|---|---|---|---|---|
| Laborers | $23.00 | $23.20 | $23.60 | $23.85 |

| | | | | |
|---|---|---|---|---|
| Carpenter Tender | 23.00 | 23.20 | 23.60 | 23.85 |
| Mason Tender | 23.00 | 23.20 | 23.60 | 23.85 |
| Cement Finisher Tenders | 23.00 | 23.20 | 23.60 | 23.85 |
| Scaffold Erectors | 23.00 | 23.20 | 23.60 | 23.85 |
| Wrecking Laborers | 23.00 | 23.20 | 23.60 | 23.85 |

| | 5/28/07 to 12/02/07 | 12/3/07 to 6/01/08 | 6/02/08 to 11/30/08 | 12/01/08 to 5/31/09 |
|---|---|---|---|---|
| Laborers | $24.10 | $24.35 | $24.85 | $25.10 |
| Carpenter Tender | 24.10 | 24.35 | 24.85 | 25.10 |
| Mason Tender | 24.10 | 24.35 | 24.85 | 25.10 |
| Cement Finisher Tenders | 24.10 | 24.35 | 24.85 | 25.10 |
| Scaffold Erectors | 24.10 | 24.35 | 24.85 | 25.10 |
| Wrecking Laborers | 24.10 | 24.35 | 24.85 | 25.10 |

The Union may increase the contributions to any of the fringe benefit plans set forth herein by any amount or amounts which do not in total exceed the amount of the increase in wages and the wage to be paid shall be reduced by a like amount.

Section 2. The rate to be paid for intermediate classifications shall be as follows. The amounts indicated shall be the amounts to be paid per hour, over and above the basic wage rate referred to above:

| | |
|---|---|
| Asphalt Rakers, Adzemen, Pipe Trench Bracers, Demolition Burners, Chain Saw Operators, Fence and Guard Rail Erectors, Setters of Metal Forms for Roadways, Mortar Mixers, Pipelayers, Riprap and Dry Stonewall Builders, Highway Stone Spreaders, Pneumatic Tool Operators, Wagon Drill Operators, Tree Trimmers, Barco-type Jumping Tampers, Mechanical Grinder Operators | $ .25 |
| Air Track Operators, Hydraulic and Similar Self-Powered Drills | 1.00 |
| Block Pavers, Rammers and Curb Setters | 1.00 |
| Pre-Cast Floor and Roof Plank Erectors | .75 |
| Powdermen and Blasters | 1.00 |
| Toxic Waste Remover | 2.00 |

Asbestos Removers(Jobs Bid prior to June 1, 2005.. 2.00
Asbestos Removers(Jobs Bid after June 1, 2005).... 0.00

Section 3. Scope and Work Jurisdiction of the Asbestos Remover: The work of the asbestos remover shall cover all work in connection with the handling, control, removal, abatement, encapsulation and disposal of asbestos and/or toxic waste.

Section 4. It is agreed that employees engaged in the business of asbestos removal will abide by the following conditions:

1. Masks and all other equipment used in the removal of asbestos must meet the regulations governing the industry.

2. Employees will be required to observe proper regulations when leaving encapsulated area for any reason.

3. Employer must provide shower facilities with hot water.

4. When necessary, lunch periods will be staggered to allow employees time for clean up.

5. Employer will furnish lockers or other means to safeguard the personal belongings of employees.

Section 5. Forty (40) hours shall constitute a week's work for all laborers; eight (8) hours shall constitute a day's work from 8:00 a.m. to 12:00 noon, and between 12:30 p.m. and 4:30 p.m. on Monday, Tuesday, Wednesday, Thursday and Friday. Upon mutual agreement between the Union and the Employer at the pre-job conference the starting time may be adjusted from 8:00 a.m. to 7:00 a.m.

All hours on any regular workday prior to and after the above mentioned hours established herein shall be paid for at the rate

of time and one-half the straight time rate. Work performed in excess of eleven (11) hours Monday thru Friday shall be paid for at the double time rate. Work performed in excess of eight (8) hours on Saturday shall be paid for at the double time rate. The first eight (8) hours worked on Saturday will be paid for at time and one-half. Sundays and Holidays specified in this Agreement shall be paid at the double time rate.

Section 6. When two (2) or more shifts are used, they shall continue for at least five (5) consecutive regular workdays unless the contractor is prevented from working such days or any portion thereof because of conditions beyond his control, including weather conditions. Shift work, that is second or third shift, shall work only in multiples of five (5) working days. (For example, a second or third shift may be terminated only on the fifth, tenth, or fifteenth working day, and so on, after it is commenced.)

The first shift shall be eight (8) hours, and the second and third shifts shall be eight (8) hours each, and eight (8) hours' pay shall be received for each shift. A shift which begins at or after 12 Midnight Sunday shall be considered the third shift.

Section 7. All overtime shall be paid in accordance with the provisions of Article III, Section 5.

Section 8. During the morning working and afternoon hours, at a time selected by the Contractor, an employee of any craft designated by the job Superintendent shall obtain coffee, provided it is readily available at the job site for each

Laborer who desires it at his own expense. This break shall not last more than ten (10) minutes.

ARTICLE IV

COVERAGE AND DESCRIPTION OF LABORERS' WORK

Section 1. It is agreed that Laborers' work shall include but not be limited to: all buildings Laborers' work necessary to tend the carpenters and other building trades craftsmen, all cleanup of debris, grounds and buildings, and all General Laborers' work.

All Laborers' work in connection with excavation for building and all other construction, including digging of trenches, piers, foundations, holes, caissons and cofferdams. (This does not restrict the laborers from performing other work.)

All Laborers' work in connection with concrete work, chipping, and grinding, mixing, handling, shoveling, conveying, pouring, concrete pumps and similar type machines, grout pumps, nozzlemen, vibrating equipment, guniting equipment and otherwise applying concrete, whether done by hand or any other process; and wrecking, stripping, dismantling and handling concrete forms and false work.

All Laborers' work in connection with excavation, grading, preparation, concreting, asphalt and mastic paving, paving ramming, curbing and flagging of other stone materials.

All Laborers' work in connection with the cutting of holes, digging of trenches, manholes, etc., handling and conveying of, all materials for same, concreting of same, and the backfilling

grading and resurfacing of same.

All Laborers' work in connection with the construction of caissons, non-metallic drains and sewers, metallic drains and sewers, any type of conduit and cribbing, lagging, bracing, sheeting, trench jacking and handling of hand-guided lagging hammers in open trenches and ditches.

All Laborers' work in connection with the shoring, underpinning and razing of all structures.

All Laborers' work in connection with drilling and loading, placing and blasting of all powder and explosives.

All Laborers' work in connection with the slinging, handling and placing of all riprap, rock and stone, retaining walls or wherever used.

All Laborers' work on precasting or prefabrication at the construction project site or at a precast or prefabrication yard specifically established and operated for that one particular construction job and in wrecking yards and wrecking work on construction.

All Laborers' work in connection with the removal of asbestos as set forth in this Agreement.

All Laborers' work in connection with the handling, control, removal, abatement, encapsulation, or disposal of toxic waste. All Laborers' work in connection with the classifications of work set forth in this Agreement.

Section 2. Definition: ``Designated Stockpile.'' Material shall be unloaded and taken to a designated stockpile within a

room, corridor, or specified area within the proximity of the point of installation. Designated stockpiles shall include several stockpiles within these areas as directed by the contractor. The carpenter will take this material from the designated stockpile to the point of installation.

1. DRYWALL and RELATED MATERIAL shall be unloaded and taken to the designated stockpiles by the Laborer.
2. METAL DOORS and FRAMES shall be unloaded and taken to the designated stockpiles by the Laborer.
3. ROUGH CARPENTRY shall be unloaded and taken to the designated stockpiles by the Laborer.
4. ALL HARDWARE will be unloaded inventoried and installed by the Carpenter.
5. The UNLOADING and INSTALLATION of all flooring materials (wood, parquet, metal cork, asphalt, carpet, linoleum, rubber base, mastic and glues etc.) the final floor preparation shall be performed by the Carpenter/Floor Layer.
6. WOOD DOORS and FRAMES shall be unloaded and installed by the Carpenter.

The area practice within the territorial jurisdiction of this Agreement for work performed by Laborers shall be as set forth in letters, incorporated herein by reference, from the Rhode Island Chapter, Associated General Contractors of America, Inc., Labor Relations Division, dated May 24, 1954 (steel sash);

September 28, 1956 (floor hardeners); March 1, 1957 (vibrators); February 3, 1958 (generators); December 11, 1959 (3) (loading and unloading, form ties, conveyors and heaters); May 20, 1960 (cartons); July 22, 1960 (stockpiling); and December 16, 1960 (steel mesh).

The Employer agrees to assign all such work as specified above only to employees covered by this Agreement.

Section 3. The Employer further recognizes that the Union claims the work set forth in Appendix A, attached hereto and made a part hereof.

## ARTICLE IV A

## CONSTRUCTION MANAGER/PROGRAM MANAGER

Whenever any signatory contractor performs work as a management consultant, construction manager, program manager, developer, owner/builder or solicits bids from sub-contractors, considers proposals submitted by subcontractors or coordinates work performed by subcontractors, it shall be deemed to be a general contractor subject to the terms and conditions of this Agreement; provided however, this provision shall not apply to any affiliated development company, or to an entity that does not select subcontractors. The Employer recognizes that the Union, pursuant to the National Labor Relations Act, has the right to request that the Employer provide it with information relating to whether it manages and/or coordinates contracts or work or selects subcontractors.

## ARTICLE V

## HEATERS

When utilizing salamanders and other heaters within the jurisdiction of the Union:

(1) Each such Employer shall assign employees covered by this Agreement to service "salamanders" in accordance with the following schedule:

### BULK SOURCE

| | |
|---|---|
| All shifts | 0 - men regardless of the number of units in the System or the size of the System |

### INDIVIDUAL UNITS

On second and third shifts, Holidays, Saturdays and Sundays:

| | |
|---|---|
| 0 - 5 units | - 0 men |
| 6 - 20 units | - 1 man |
| 21 - 35 units | - 2 men |
| 36 - 50 units | - 3 men |

Each additional 15 units - 1 man "Individual Units", as set forth in the above schedule, shall be defined as being fed by a tank up to one hundred (100) pounds. Service on the first shift shall be performed by laborers performing other functions on the project.

(2) The Laborer, if any, assigned to service the Bulk Source system shall be required to service and hook-up the individual units of the system at the beginning of and during its operation but shall not be assigned the work of repairing or installing the piping systems, as that work is assigned to other crafts.

(3) Laborers servicing heaters on the second and third shifts on regular workdays and servicing heaters on Holidays, Saturdays and Sundays shall receive twenty-five ($.25) cents per hour above the basic rate for all hours worked. For the purpose of this Article, second and third shifts and all shifts on Holidays, Saturdays and Sundays shall be eight (8) hours each. Laborers employed more than forty (40) hours in any work week under this Article shall be paid time and one half for hours worked over forty (40).

## ARTICLE VI

## REPORTING TIME PAY

Section 1. After a person has been hired and ordered to report to work at the regular starting time and no work is provided for him on the day that he has so reported, he shall receive pay equivalent to two (2) hours at the rate applicable for that day. This pay shall not be provided if he has previously been ordered not to report for work on that particular day. If the person has been working regularly and the Employer

has failed to notify him not to report for work before leaving his residence, he shall be entitled to two (2) hours' reporting time pay at the applicable rate for that day.

Section 2. Employees shall furnish the Employer with current telephone or other contact at the start of each job, and advise the Employer of any subsequent change or changes in such contact during the course of the job.

Section 3. Any person who reports to work and is ready to commence work at his/her regular starting time, and for whom any work is provided, regardless of the time that he/she works, shall receive the equivalent of not less than four (4) hours' pay for said day.

Section 4. Any person who reports to work and is ready to commence work at his/her regular starting time, and who works four (4) hours in any one day, shall receive the equivalent of not less than eight (8) hours' pay for said day.

Section 5. It is expressly provided, however, that if the employee leaves the job site without permission of the Employer, or when a person refuses to work or continue to work or work stoppage conditions brought about by a third party or parties prevents or makes ill-advised, in the opinion of the Employer, the performance of any work or the continuance of work once started, no pay for time not actually worked shall be required under any of the above-enumerated conditions.

Section 6. Where notification to the men is required under this Agreement to the effect that work shall not be performed on

a particular day, notification of such fact to the steward shall be sufficient notification to the men, provided the steward is permitted enough time during working hours to notify the men.

Section 7. When weather conditions make the commencement or continuation of work impractical, then the Employer shall decide the number of and individual employees who shall work. In no event will the employees selected displace employees normally performing that task or those tasks to be worked on the inclement weather day who had been performing the task or tasks on the previous day.

Section 8. The provisions of Sections 1, 3 and 4 of this Article shall not apply when the Employer determines that work is unavailable because of weather conditions.

## ARTICLE VII

## CONDITIONS OF AGREEMENT

Section 1. All wages due under this Agreement shall be paid on the regular pay day designated by the Employer in lawful U.S. currency, Employer's payroll check, certified check, or bank check, once each week during working hours, before 3:30 p.m. Payment shall be made showing employee's name, hours worked, amount earned, social security deduction, withholding tax. Any Employer paying wages to an employee by check shall do so during working hours, before 3:30 p.m. on Monday, Tuesday, Wednesday, or Thursday. If the regular pay day falls on a holiday that is not worked, the employee then shall be paid on the day before the holiday in question unless the Employer is unable to make

payment because of conditions which could not be reasonably anticipated. The Employer shall withhold not more than three (3) days' pay in any one week. If an employee is discharged or laid off for any reason, except for just cause, prior to 12 noon on any day, he shall receive a minimum of four (4) hours' wages for that day and shall be paid prior to 11:30 a.m. for all wages, due him for that day and all days worked prior to his discharge or layoff. In the event an employee is discharged or laid off for any reason, except for just cause, after 12 noon on any day, his wages shall be paid in full before 4 p.m. If payment is not made expressly as provided herein, then the employee who has been terminated shall be paid for all waiting time until paid; waiting time to be computed at the regular straight-time rate. If an employee quits of his own accord, he shall receive wages for the time that he worked on the next regular pay day.

Section 2. Raingear and slip-over boots must be provided by the Employer when men are required to work in rain, water, mud, concrete or snow. Men cannot be discharged if they are unable to work because they are not furnished raingear and slip-over boots; provided that, notwithstanding any other provision in this Agreement, no payment shall be made for time not worked. All tools, boots, hats and raingear and other implements and equipment, other than those customarily furnished by employees, necessary to the performance of any work covered by this Agreement, shall be furnished by the Employer and shall remain the property of the Employer and shall be returned to the

Employer when not in use or upon leaving its employ.

Section 3. Clothes Room. The Employer shall provide a clean, comfortable, heated shed or room, of suitable size, relative to the number of Laborers employed, for the Laborers to change their clothes and partake of their lunch.

Section 4. Drinking Water. The Employer shall provide a clean can of drinking water with paper cups, readily available to each employee on the construction site.

Section 5. Toilets. Clean, sanitary toilets shall be provided for the employees' use.

Section 6. Telephone. If a telephone is on the job site, then the employees may use it in the case of an emergency.

Section 7. Lost Time Because of Accidents.

(a) There shall be no lost time on the day of a minor injury for a laborer obliged to receive medical attention and treatment, providing he returns to work within a reasonable time on that day.

(b) Employees seriously injured on the job who have to obtain medical treatment shall not be required to return the day of injury to receive payment of wages for that day. A serious injury is defined as an injury which prevents the employee from working on the working day following the date of injury.

(c) If a laborer, while working on the job, is required to secure additional treatment during working hours for a job injury, he shall be paid two (2) hours' pay for each working day on which treatment is required, to a maximum of three (3)

visits.

(d) When an employee is seriously injured on the job, the steward or the foreman shall be permitted to notify the Union of the injury.

Section 8. Quitting Time. Each employee shall be given five (5) minutes at the end of the day to put away his tools and be at the clothes room or change shack at quitting time.

Section 9. Travel and Out-of-Town Expense Allowance. It is agreed that the headquarters of Local Union 15 is the Town of Westerly, the headquarters of Local Union 271 is the City of Providence, and the headquarters of Local Union 673 is the City of Newport. When employees are working on the Island of Jamestown, they shall receive bridge tokens but no other travel expense, and, provided further, transportation, room and board shall be paid by the Employer to all employees working on Block Island.

Section 10. Health, Safety and Welfare.

(A) The Employer and the Union also agree to mutually cooperate and consult with each other with respect to all aspects of safety, accident prevention, health, medical facilities and medical treatment, to the end that the health, safety and welfare of the Laborers working on the project may be adequately and properly protected and promoted and the prosecution of the work efficiently carried on; also, the safety regulations of the State of Rhode Island must be complied with in full. It is understood and agreed that the parties to this agreement shall at all times

comply with Occupational Safety and Health Act Regulations and any refusal on the part of a member to work in contravention of such regulations shall not be a breech of this agreement. Further, no employee will be discharged or disciplined because he/she fails to work under unsafe conditions or because he/she insists on safe working conditions as defined by OSHA and the Employer Safety Plan whichever is more stringent. Any refusal by an employee to abide by applicable safety regulations after being duly warned will be sufficient cause for dismissal.

(B) The Union and the Employer will work to ensure that every Journeymen and Apprentice have a 10 Hour OSHA Card on their person.

(C) The Union and the Employer will work to ensure that every Union Foreman have a 30 Hour OSHA Card of their person.

(D) In the interest of safety the Personal use of cell phones during working hours will be prohibited. The parties agree that cell phones may be used by Stewards employed on the project to conduct Union business. Cell Phones may be used by all other Laborers on the project at coffee breaks and lunchtime. Emergency calls will be processes through the job site Office and job site Superintendent on the project.

<u>Section 11. Manning requirements.</u> The Employer agrees to employ a minimum of two Laborers when Laborer work is being performed on any of its projects. However, if the Employer has more than one project in progress at the same time, it will only

be obligated to employ a total of two Laborers. The Employer's compliance with this provision shall not be the basis for requiring the Employer to employ a steward on its payroll.

## ARTICLE VII A

## HOLIDAYS

Section 1. If a holiday falls on Sunday, the day celebrated as such shall be considered a holiday. Holidays which will be observed are:

| | |
|---|---|
| New Year's Day | Labor Day |
| Presidents Day | Columbus Day |
| Memorial Day | Armistice Day |
| Fourth of July | Thanksgiving Day |
| Victory Day | Christmas Day |

and any legal holiday declared by an Act of the Rhode Island Legislature.

## ARTICLE VIII

## BUSINESS MANAGER - FIELD REPRESENTATIVES

## STEWARDS - FOREMEN

Section 1. The Business Manager or Field Representatives of the union shall be allowed to visit the job during working hours.

Section 2. A steward shall be appointed or furnished by the Union representative who is servicing the job. The Steward may be assigned to a Laborer subcontractor on the project with the

prior approval of the Business Manager, which shall not be unreasonably withheld so long as the general contractor, construction manager, program manager, quality control manager does not employ Laborers on its payroll. However, the general contractor or construction manager shall have the ultimate responsibility to make certain that a Steward is present when required by this Article. He shall be allowed to carry out the provisions of this Agreement and report any violations of same to the Union. He shall work all overtime possible, and he shall not be laid off or discharged, except for just cause, unless a prior conference be held with the Business Manager or Field Representative, except where he is the last Laborer on the job other than the foreman. In the event that a layoff is to occur, the steward shall be notified as to the layoff no later than 4:00 p.m. on the date said layoff is to occur. The Employer agrees that Stewards shall not be hindered, cohersed, restrained or interfered with in their performance of grievance investigation and employee representation.

The Steward shall be a qualified journey person and shall be expected to perform assigned work as directed by his/her employer.

No steward shall be denied overtime because of his/her designation as Steward.

<u>Section 3.</u> <u>Foremen.</u>

(a) The minimum rate of wages for all Laborer Foremen on

the basis of all regular working hours shall be One Dollar ($1.00) per hour in excess of the basic rate provided for herein, and they shall be covered by the fringe benefits of this Agreement. A foreman shall not work overtime, including Saturdays, Sundays and Holidays, unless at least one laborer employee working under his direction works said overtime hours.

(b) A Laborer Foreman shall be appointed on all projects where more than six (6) laborers are employed.

(c) All Laborer Foremen who are employed on a project with a building cost of $1 million or more shall be guaranteed a forty (40) hour week at the regular foreman wages.

## ARTICLE IX

## RHODE ISLAND LABORERS' HEALTH FUND

Section 1. Effective June 1, 2005 the contributions and payment by members of the Association shall be Five Dollars and Fifty($5.50) Cents per hour worked by each employee covered by the terms of this Agreement to the Health Fund known as "Rhode Island Laborers' Health Fund". Effective November 28, 2005, the contribution and payment by members of the Association shall be Five Dollars and Fifty -Five ($5.55) Cents per hour worked by each employee covered by the terms of this Agreement to the Health Fund known as "Rhode Island Laborers' Health Fund". Effective May 29, 2006, the contribution and payment by members of the Association shall be Five Dollars and Nincty ($5.90)

Cents per hour worked by each employee covered by the terms of this Agreement to the Health Fund known as ``Rhode Island Laborers' Health Fund''. Effective December 4, 2006, the contribution and payment by members of the Association shall be Six Dollars and Forty ($6.40) Cents per hour worked by each employee covered by the terms of this Agreement to the Health Fund known as ``Rhode Island Laborers' Health Fund''. Effective May 28, 2007, the contribution and payment by members of the Association shall be Six Dollars and Sixty-Five ($6.65) Cents per hour worked by each employee covered by the terms of this Agreement to the Health Fund known as ``Rhode Island Laborers' Health Fund''. Effective December 3, 2007, the contribution and payment by members of the Association shall be Seven Dollars and Fifteen ($7.15) Cents per hour worked by each employee covered by the terms of this Agreement to the Health Fund known as ``Rhode Island Laborers' Health Fund''. Effective June 2, 2008, the contribution and payment by members of the Association shall be Seven Dollars and Forty ($7.40) Cents per hour worked by each employee covered by the terms of this Agreement to the Health Fund known as ``Rhode Island Laborers' Health Fund''. Effective December 1, 2008, the contribution and payment by members of the Association shall be Seven Dollars and Ninety ($7.90) Cents per hour worked by each employee covered by the terms of this Agreement to the Health Fund known as ``Rhode Island Laborers' Health Fund''.

<u>Section 2.</u> Said sum will be paid into said Fund not later than the twentieth day of each and every month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The said Fund will be administered by a Board of Trustees, one half of whose members shall be selected by the Union and the other half by the Employer. The Board of Trustees shall be selected and appointed under the provisions of a Trust Agreement executed by the Union and the Employers. Said Trust Agreement shall conform to the Labor Management Relations Act of 1947, as amended, and all other applicable laws and regulations of the United States and the State of Rhode Island. The said Fund will be used to purchase accident and sickness disability insurance and hospitalization, medical and surgical benefits and/or other welfare benefits of a similar nature for the said employees as provided in said Trust Agreement.

<u>Section 3.</u> The Union reserves the right to remove the employees whose wages, hours and working conditions are set forth in this Agreement from any job for which the Employer has failed to remit to the aforementioned Health Fund monies due to the Fund within the time for payment thereof, as determined by the board of Trustees acting under the authority of the Agreement and Declaration of Trust under which the Fund operates.

<u>Section 4.</u> The failure to contribute by the Employer to the said Health Fund, as provided herein, for the purpose of the remedy the Union may pursue, is covered in Article XV herein.

The Rhode Island Laborers' Health Fund shall meet the requirements of all Federal and State Laws regarding same, including the Internal Revenue Service.

ARTICLE X

RHODE ISLAND LABORERS' PENSION FUND

Section 1. Effective 6/1/05 For the purpose of providing retirement benefits for employees covered by this Agreement, each Employer shall contribute the sum of Four Dollars Twenty ($4.20) Cents per hour for each hour employees, subject to this agreement, receives pay to the Rhode Island Laborers' Pension Fund. This shall include, but shall not be limited to periods of actual hours of overtime. Effective 11/28/05 each Employer shall contribute the sum of Four Dollars Thirty ($4.30) Cents per hour for each hour employees, subject to this Agreement, receives pay to the Rhode Island Laborers' Pension Fund. Effective 5/28/07 each Employer shall contribute the sum of Four Dollars Forty ($4.40) Cents per hour for each hour employees, subject, to this Agreement, receives pay to the Rhode Island Laborers' Pension Fund.

Section 2. Said sums will be paid into the Fund not later than the twentieth day of each and every month for hours worked by said employees up to the end of the last complete payroll period of the preceding calendar month. The Fund will be administered by a Board of Trustees selected under and subject to the provisions of, a Trust Agreement and plan entered into by